UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 09-41-DLB

GATX CORPORATION,                                                                    PLAINTIFF,

V.                **MEMORANDUM OPINION & ORDER**

APPALACHIAN FUELS, LLC, et al.,                              DEFENDANTS.

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Defendant's Motion to Compel Production of Documents and Other Information from GATX Corporation [R. 55] and the Plaintiff's Motion for Sanctions [R. 58]. Each motion will be discussed in turn, and for the reasons stated below, the Defendant's Motion to Compel is granted in part and denied in part. The Plaintiff's Motion for Sanctions will be set for an evidentiary hearing.

## I. BACKGROUND

In this diversity action, the Plaintiff, GATX Corporation, seeks to recover damages from the lessor defendant, Appalachian Fuels, LLC, for an alleged breach of two mining equipment leases. GATX also seeks to recover from the several guarantor co-defendants. Larry Addington is alleged to have signed a personal guaranty on the agreements entered into between GATX and Appalachian Fuels. Addington disputes that he signed the guaranty at issue and has raised several defenses to liability. The present discovery disputes between GATX and Addington are addressed below.

## II. ADDINGTON'S MOTION TO COMPEL

In his motion to compel, Addington requests the Court:

(1) to compel GATX to supply verification pages to its answers and supplemental answers to the first and second set of interrogatories by the Defendant;

(2) to find that GATX has waived the attorney-client privilege and work-product protection applicable to documents contained in GATX's privilege log, because GATX intentionally produced privileged documents during discovery that concern the same subject matter as those documents withheld in the privilege log;

(3) to find that GATX's responses to Addington's requests for admission were improper and to compel GATX to provide proper responses; and

(4) to find that GATX failed to fully to respond to an interrogatory propounded on it by Addington.

GATX has responded to the motion, but Addington failed to file a reply. The time limit for filing a reply having expired under LR 7.1 (c), Addington's motion to compel is now ripe for review. Each of the four discovery issues will be addressed separately.

**A. Verification Pages**

Addington first alleges that, despite repeated requests by his counsel, GATX has failed to provide signed verification to its answers to Addington's first and second set of interrogatories as required by Fed. R. Civ. Proc. 33(b)(5). GATX responds that it sent the requested verification pages to Addington's counsel via e-mail and that Addington's counsel filed the present motion to compel after receiving the verification pages. GATX has attached copies of emails sent to Addington's counsel indicating that the requested verification pages were indeed provided. Addington has not

disputed GATX's contentions. Accordingly, Addington's motion to compel production of verification pages pursuant to Rule 33(b)(5) is denied.

**B. Subject Matter Waiver of Attorney-Client Privilege and Work-Product Protection**

Addington alleges that, in response to his document requests, GATX intentionally produced hundreds of documents protected by the attorney-client privilege and/or work-product doctrine. In support of this contention, he attached as an exhibit over 200 pages of documents alleged to constitute attorney-work product or contain privileged communications. Addington argues that because GATX intentionally disclosed these protected documents, it thereby waived the attorney-client privilege and work-product protection with respect to any related documents contained in GATX's privilege log. Addington believes that GATX is using the attorney-client privilege and work-product doctrine as a litigation tactic so that it can selectively produce privileged documents it intends to use at trial while withholding other privileged documents that would be harmful to its case.

The burden of establishing the existence of a privilege rests with the party asserting the privilege. In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983). The burden of showing that a privilege has not been waived also falls on the party claiming the privilege. Mainstay High Yield Corp. Bond Fund v. Heartland Indus. Partners, L.P., 263 F.R.D. 478, 480 (E.D. Mich. 2009) (citing U.S. v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997); Weil v. Investment/Indicators, Research and Mgmt, Inc., 647 F.2d 18, 25 (9th Cir. 1981). In the present case, Addington is asserting a subject matter waiver by GATX. Federal Rule of Evidence 502 provides the standard for subject matter waiver and states that if a privilege is waived by a disclosure in a Federal proceeding, that waiver extends to undisclosed materials if:

3

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness be considered together.

The Rule 502 analysis is predicated on a finding that the party asserting a privilege waived that privilege through a disclosure. Fed. R. Evid. 502(a) ("when the disclosure is made in a Federal proceeding ... and waives the attorney-client privilege or work-product protection ... .") Accordingly, the first step in the Court's analysis is to determine whether any of the documents disclosed by GATX during discovery are actually privileged.

Because this is a diversity action, the Court applies Kentucky privilege law. See Fed. R. Evid. 501. The attorney-client privilege attaches to confidential communications between an attorney and client that are "made for the purpose of facilitating the rendition of professional legal services to the client ... ." Ky. R. Evid. 503. After viewing the allegedly privileged documents disclosed by GATX, the Court finds that most of them contain a mixture of legal advice and business discussions. "When communications contain both legal advice and non-legal considerations, a court must consider 'whether the predominant purpose of the communication is to render or solicit legal advice.'" Cooey v. Strickland, 269 F.R.D. 643, 650 (S.D. Ohio 2010) (quoting Pritchard v. County of Erie, 473 F.3d 413, 420 (2d Cir. 2007)). The Court concludes that the majority of the communications found in the documents attached by Addington are primarily business related and therefore not privileged. The attorney-client privilege "is triggered only by a client's request for legal, as contrasted with business, advice. Where the attorney acts merely as a ... business adviser ... the privilege is inapplicable." Lexington Public Library v. Clark, 90 S.W.3d 53, 60 (Ky. 2002)

4

(internal citations omitted).

Some of the documents disclosed by GATX, however, appear to be primarily legal in nature and may satisfy the elements of attorney-client privilege. These documents consist primarily of email communications and are labeled bates numbers 000081 - 000092 [R.56-7 at 6-12], numbers 000093 - 000109 [Id. at 13-26], number 000113 [Id. at 30], 000127 - 000140 [R. 56-8 at 1-13] and number 000445 [Id. at 40]. In its response to Addington's motion, GATX failed to address whether many of these specific documents are in fact privileged.

The first set of documents consists of email communications between GATX employees and GATX's corporate counsel. [R. 56-7 at 6-12]. In these emails, the employees discuss Kentucky law and the need for a resale certificate to use in connection with GATX's lease of equipment to Appalachian Fuels. GATX asserts that these emails consist of nothing more than GATX's corporate counsel sending documents available to the general public, i.e. Kentucky sales tax forms. GATX characterizes this communication as counsel merely acting as a conduit for non-confidential information, in which case the attorney-client privilege is not applicable. U.S. v. DeFazio, 899 F.2d 626, (7th Cir. 1990). In the absence of any argument by Addington to the contrary, the Court agrees that most of the information contained in these emails is not confidential. Furthermore, although these email communications may contain some legal advice, the record is insufficient to permit a determination whether GATX employees sought advice on Kentucky sales tax laws for business or legal purposes. See Clark, 90 S.W.3d at 62-63. Additionally, these emails appear to be related to GATX's purchase of equipment from a third-party and unrelated to any issues in the present case. Accordingly, the Court does not find this set of documents privileged.

The email labeled bates number 000113 contains a discussion that exhibits some elements

5

of the attorney-client privilege. [R. 56-7 at 28-30]. In this email, Mary Keating, who appears to be a GATX employee, sends an email to GATX's corporate counsel, Nick Fell. In the email, Ms. Keating recommends that GATX adopt into its lease and guaranty some terms and conditions that were included in one of Appalachian Fuel's agreements with a different lender. In its response GATX failed to address whether this email is privileged. Again, however, there is simply not enough information for the Court to determine whether this email is privileged. Although this email clearly contains a communication of advice from a GATX employee to its corporate counsel, it is not apparent what prompted the advice, for what purpose it was given, or whether it is even legal advice at all. Nothing in the record supports a finding that this document is privileged.

The email labeled bates number 000445 contains communications between GATX corporate counsel, Rachel Lei, and other GATX employees. [R. 56-8 at 40]. GATX offers no explanation for why this document is not privileged. In the email, GATX employee Eric Harkness asks corporate counsel for an update on where the company is in pursuing its claim against Addington. Lei responds that she asked GATX's outside counsel to draft discovery and states that as part of its claim, GATX needs to determine what it recovered from the bankruptcy sale of its equipment and whether GATX's sale efforts were reasonable. [Id.]. Absent any argument from Addington to the contrary, the Court views this email not as a request for legal advice, but rather GATX's corporate counsel keeping other employees updated on the status of the company's case against Addington. Nothing in this email can be characterized as a request for legal advice or a response to such a request.

The next group of documents consists of emails between GATX's outside counsel and Nick Fell, GATX's corporate counsel. [R. 56-7 at 13-26]. Again, GATX makes no attempt to explain

why the Court should not find that these emails contain confidential attorney-client communications. In these emails, Nick Fell requests outside counsel to review the lease and guaranty agreements GATX planned to enter into with Addington and Appalachian Fuels. In response, GATX's outside counsel provides advice concerning whether Appalachian Fuels should be a lessee or guarantor on the lease, whether certain guarantor entities were registered to do business in Kentucky, and the selection of a forum for disputes brought on the guaranty. [Id. at 13]. Facially, these emails fit within the definition of a confidential communication between an attorney and client to which the attorney-client privilege attaches. See Ky. R. Evid. 503.

Another set of emails [R. 56-8 at 1-13] consists of communications between GATX employee Bix Weir and corporate counsel, Nick Fell. These emails concern the incorporation of certain language into the Appalachian Fuels lease. It appears that this email exchange began with Weir requesting information from Fell to assist him in preparing certain provisions of the Appalachian Fuels lease. Fell responded by sending Weir a copy of a similar provision from another lease that GATX had done. Finally, it appears that Weir then sends Fell the language that will be used in the lease. Again, GATX provides no argument as to why these emails are not privileged. Facially, however, these emails appear to constitute confidential attorney-client communications and thus would be privileged.

Finally, one other set of documents labeled bates numbers 000300-000314 may constitute attorney work-product. [R. 56-8 at 33-38]. The work-product protection extends to documents and tangible things that are prepared in anticipation of litigation or for trial by or for a party's attorney. Fed. R. Civ. Proc. 26(b)(3)(A), In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986). The "work-product doctrine shelters the mental processes of the attorney, providing a privileged area

7

within which he can analyze and prepare his client's case." U.S. v. Nobles, 422 U.S. 225, 238 (1975). One document at issue here is entitled "Outline of Items to Convey on Monday July 6th call with GIC". [R. 56-8 at 33-34]. It is not clear who drafted this document, but a portion of it concerns legal developments in GATX's suit against Appalachian Fuels and Addington. It does not appear this document was prepared in anticipation of litigation or for trial, however. Rather, it appears simply to be an update on the status of the case given to interested parties on GATX's side of the litigation. Nothing in this document contains "mental impressions, conclusions, opinions, or legal theories" of GATX's attorneys or representatives. Fed. R. Civ. Proc. 26(b)(3)(B).

The other set of documents is entitled "Situation Briefing - 6/19/2009" and appears to be a document prepared by GATX employees for the purpose of summarizing the status of GATX's claims against Appalachian Fuels and Addington. [R. 56-8 at 35-39]. Again, this document seems to be more of a summary of the legal steps taken by GATX to protect its property and to pursue a claim against Appalachian Fuels and Addington. There is no indication that this was a document prepared in anticipation of litigation or for trial.

After reviewing all of the allegedly privileged documents disclosed by GATX during discovery, only a few appear to be actually privileged. These documents consist of emails between GATX's corporate counsel and another employee [R. 56-8 at 1-13] and emails between GATX's corporate counsel and outside counsel. [R. 56-7 at 13-26]. Having determined that these documents are protected by the attorney-client privilege, the next step is to determine whether their disclosure to Addington during discovery waives that privilege. "Voluntary disclosure of privileged communications is inconsistent with an assertion of the attorney client privilege." U.S. v. Skeddle, 989 F.Supp. 905, 908 (N.D. Ohio 1997). Therefore, by voluntarily disclosing a privileged

communication to the opposing party, the holder of the privilege waives it. In re OM Sec. Litig., 226 F.R.D. 579, 590 (N.D. Ohio 2005). The burden is on GATX to prove that it did not waive the attorney-client privilege by disclosing these documents to Addington. Mainstay Corp. Bond Fund, 263 F.R.D. at 480.

GATX argues that it mistakenly disclosed one privileged communication to Addington, but it notified Addington's counsel of the mistake and requested the return of that document. [R. 61 at 3]. Federal Rule of Evidence 502(b) states that a disclosure does not operate as a waiver if:

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error.

Although GATX argues that it inadvertently disclosed a privileged communication, it failed to identify in its response which document, or documents, it sought the return of. Because GATX failed to identify the steps it took comply with Rule 502(b), the Court will assume the disclosure of these documents was not inadvertent. Therefore, GATX waived the attorney-client privilege with respect to the particular emails disclosed to Addington during discovery. That waiver, however, does not automatically extend to other privileged documents that have not been disclosed. Rule 502(a) provides that, if a privilege is waived by a disclosure in a Federal proceeding, that waiver extends to undisclosed materials only if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness be considered together.

9

With respect to the first requirement, Addington alleges that GATX intentionally waived the attorney-client privilege because it produced "hundreds" of privileged documents. Addington also alleges that the waiver must have been intentional because his counsel notified GATX that it had produced privileged documents, but GATX never indicated the production of these documents was in error or attempted to retrieve them. In response, GATX argues that any waiver was unintentional because it only produced one privileged communication and immediately requested its return once Addington identified the documents he believed to be privileged. Contrary to Addington's allegation that "hundreds" of privileged documents were disclosed, the Court could only find about 25 pages out of over 200 that actually contained some form of privileged communication. The number of privileged documents disclosed does not necessarily support a finding of an intentional waiver of the attorney-client privilege. Addington also does not dispute that GATX sought the return of the documents it considers privileged.

Furthermore, the Court finds that subject-matter waiver in this case would be inconsistent with the purposes of Rule 502(a). The Advisory Committee Notes to Rule 502(a) state that

> The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Under Rule 502(a), subject matter waiver exists only in cases where a party deliberately discloses privileged information in an attempt to gain a tactical advantage. In re United Mine Workers of America Emp. Benefit Plans Litig, 159 F.R.D. 307, 312 (D.D.C. 1994). For example, a court will find a subject matter waiver if a party voluntarily waives its privilege by putting the subject matter

of a privileged communication at issue. New Phoenix Sunrise Corp. v. C.I.R., No. 09-2354, 2010 WL 4807077, *8 (6th Cir. Nov. 18, 2010). In the present case, the Court does not find that GATX is using the attorney-client privilege as both a shield and a sword. In re Lott, 424 F.3d 446, 454 (6th Cir. 2005). The Court has found that two sets of emails disclosed by GATX are in fact privileged. However, it does not appear that GATX has put the contents of either of these emails at issue in order to prove its case. In fact, none of the privileged emails appear on GATX's exhibit list, [R. 59] and GATX has indicated that it does not intend to introduce them at trial.

Accordingly, the Court finds that any waiver of the attorney-client privilege in this matter extends only to the information actually disclosed in the documents labeled bates numbers 000093 - 000109 [R. 56-7 at 13-26] and 000127-000140. [R. 56-7 at 1-13]. This waiver does not extend to any other documents withheld in GATX's privilege log.

**C. Improper Responses to Addington's Requests for Admission**

Addington's next claim is that GATX improperly responded to his requests for admission by claiming to have insufficient information to admit or deny the requests. The Rule, however, specifically contemplates such a response: "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. Proc. 36(a)(4). Addington does not challenge the sufficiency of these responses, but whether they are proper under the rule. Undoubtedly they are.

> The advisory committee notes to the Rule state that
>
> The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him. In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal. Even when it is not, the information may be close enough at hand to be

> "readily obtainable." Rule 36 requires only that the party state that he has taken these steps.

Fed. R. Civ. Proc. 36, Advisory Committee Note on 1970 Amendment to Subdivision (a). The answers Addington argues are improper all state that GATX made a reasonable inquiry regarding the subject matter of the request for admission, and the information that GATX has, or can readily obtain, was insufficient for it to answer Addington's request. GATX's answers conform with the Rule, and Addington has presented no evidence that GATX failed to make a reasonable inquiry. Accordingly, Addington's motion is denied with respect to his request that the Court compel GATX to admit or deny certain requests for admission.

**D. Failure to Respond to Interrogatory No. 1 of the Second set of Interrogatories**

Because GATX answered several of Addington's requests for admission by stating that it did not have sufficient information to either admit or deny the requests, Addington sought the details of GATX's efforts to obtain such information by propounding the following interrogatory:

> If you stated that you lack sufficient information to either admit or deny any Request for Admission served upon you ... then for each Request to which you gave such a response please describe in detail your method and scope of inquiry into its subject matter and describe in detail all information that is known or readily obtainable by you as required by Fed. R. Civ. Proc. 36.

Interrogatories of this type are frequently used to uncover the details of a party's responses to requests for admission, however, they are often challenged for violating the numerosity limits of Rule 33(a). See Safeco of America v. Rawstron, 181 F.R.D. 441 (C.D. Cal. 1998). GATX has not challenged this interrogatory on numerosity grounds, but rather asserts that its answer was sufficient and that Addington has already been given all the information requested in this interrogatory.

GATX did not answer this interrogatory by addressing, individually, each request for admission to which it responded that it lacked sufficient information to either admit or deny. Rather,

GATX provided a general answer that it

> made a thorough search of its files and records. Plaintiff also made inquiries of former and current employees of both GATX and GE Capital Corporation. Plaintiff has propounded discovery requests upon Larry Addington in an attempt to gain information regarding the subject matter of this request. At the time Plaintiff answered this request, Addington had been uncooperative and almost completely unresponsive to Plaintiff's discovery. All information that was known or readily obtainable by Plaintiff at the time of its answer to these requests was provided to Defendant in Plaintiff's response to discovery. Discovery is not complete on the subject matters of these requests.

[R. 55-6 at 2-3].

Federal Rule of Civil Procedure 33 states that an interrogatory may relate to any matter that is relevant and nonprivileged. The party upon whom interrogatories are served must answer each interrogatory separately and fully. Fed. R. Civ. Proc. 33(b)(3). The Court finds that GATX did not answer this interrogatory fully and will therefore order a more complete answer. This interrogatory requests information concerning GATX's responses to requests for admission. A party responding to a request for admission "may assert lack of knowledge or information as a reason for failing to admit or deny *only* if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. Proc. 36(a)(4) (emphasis added). GATX responded to several requests by asserting lack of knowledge or information and represented that it fully complied the reasonable inquiry requirement. It is not, therefore, unreasonable to require GATX to provide the details of its compliance with Rule 36(a)(4). GATX shall also identify which of the documents it has disclosed during discovery are responsive to the interrogatory.

### III. PLAINTIFF'S MOTION FOR SANCTIONS

Also before the Court is GATX's motion for sanctions against Larry Addington for failure

to appear at his deposition. Mr. Addington was noticed to appear for a deposition on September 28, 2010. Due to a scheduling conflict on the part of Mr. Addington's attorney, counsel for both parties agreed to delay Addington's deposition by one day. On September 28, the day before Addington's deposition was scheduled to take place, Addington's counsel informed GATX that Addington would not be able to attend the deposition due to medical concerns. Addington's counsel also indicated that Mr. Addington would be filing for bankruptcy. However, it does not appear that he has ever filed for bankruptcy.

Following Mr. Addington's failure to appear at the September 29, 2010 deposition, GATX filed the present motion for sanctions. [R. 58]. Addington believes sanctions in this case are unwarranted, because he is receptive to extending discovery deadlines in order to have his deposition taken. Addington also attached to his response a letter provided by his doctor. This letter states that at the time the deposition was scheduled to take place, Mr. Addington was experiencing persistent back pain and had been prescribed medications that may cloud his judgment. [R. 65-1]. However, the doctor gave no indication of when Mr. Addington's impairments might be resolved or provide a time frame for when he would become medically capable of giving a deposition.

Having considered the parties' memos and the letter of Mr. Addington's physician, the Court will order that this matter come before the undersigned for an evidentiary hearing. During the hearing counsel shall address the Plaintiff's Motion for Sanctions, [R. 58] as well as the steps being taken to make Mr. Addington available for deposition.

### IV. CONCLUSION

Having considered the matter fully, and being otherwise sufficiently advised,

IT IS ORDERED AS FOLLOWS:

(1) GATX's Motion for Sanctions [R. 58] shall come before the undersigned for an evidentiary hearing on THURSDAY, DECEMBER 16, 2010, AT THE HOUR OF 1:00 P.M., in the United States Courthouse, Ashland, Kentucky;

(2) Larry Addington's Motion to Compel Production of Documents and Other Information from GATX Corporation [R. 55] is GRANTED IN PART and DENIED IN PART. As outlined above, within 10 days of entry of this order GATX shall provide a more complete response to Interrogatory No. 1 of Larry Addington's Second Set of Interrogatories. All other requests for relief in this motion [R. 55] are DENIED.

Signed December 7, 2010.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge