**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 09-41-DLB-EBA**

GATX CORPORATION                                                         **PLAINTIFF**


vs.                              <u>**MEMORANDUM OPINION AND ORDER**</u>


**APPALACHIAN FUELS, LLC, ET AL.**                               **DEFENDANTS**

\* \* \* \* \* \* \* \* \*

Plaintiff GATX Corporation ("GATX") commenced this action to recover damages for breach of two equipment leases against Defendant Appalachian Fuels, LLC ("Appalachian Fuels") and breach of guaranties against thirteen co-defendant guarantors. This Court's jurisdiction is premised on diversity of citizenship. Subsequent to the filing of the Complaint, Defendant Appalachian Fuels and nine of the corporate guarantors sought and received protection under state or federal bankruptcy.

This matter is currently before the Court on Plaintiff's Motion for Summary Judgment (Doc. # 62) against the remaining solvent guarantors, Energy Coal Resources, Inc. ("ECR"), Illinois Holding Company, Inc. ("Illinois Holding") and Illinois Fuel Company, LLC ("Illinois Fuel").[1] The motion has been fully briefed, (Docs. # 62, 71, 75), and Oral Argument was held on May 2, 2011. The matter is now ripe for review. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**.

---

[1] Plaintiff's Motion for Summary Judgment (Doc. # 62) was also originally against Defendant guarantor, Larry Addington. However, after the filing of the motion, Plaintiff settled its claims with Addington, and he has been dismissed from this action (Doc. # 90).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2005, Appalachian Fuels executed and delivered to First National Capital Corporation (FNCC) a master lease agreement concerning the lease of mining equipment to be utilized in Appalachian Fuels' and the guarantors' coal mining operations.[2] (Docs. # 1-2; 62-5, at ¶ 5).  This lease contained a California choice of law provision.  (Doc. # 1-2, at 5).  On September 11, 2006, Appalachian Fuels and FNCC executed Equipment Schedule #6, which was then amended on December 28, 2006.  (Docs. # 1-3; 1-4; 62-5, at ¶ 6).  Schedule #6 required Appalachian Fuels to make monthly lease payments of $150,105.00 through November 21, 2009.  (Doc. # 62-5, at ¶ 8).  Thereafter, on March 16, 2007, the FNCC lease, equipment schedule and amended equipment schedule were assigned to Plaintiff GATX.  (Docs. # 1-9; 62-5, at ¶ 10).

On September 27, 2005, Appalachian Fuels entered into a second master lease agreement, this time directly with GATX.[3]  (Doc. # 1-10; 62-5, at ¶ 12).  This lease contained a Kentucky choice of law provision.  (Doc. # 1-10, at 11).  The GATX Lease had two equipment schedules: Schedule #1 was executed on September 27, 2005, and Schedule #3 was executed on March 13, 2007.  (Docs. # 1-11; 1-12; 62-5, at ¶¶ 13-14).  Pursuant to Schedule #1, Appalachian Fuels was required to make monthly lease payments of $46,144.37 from October 27, 2005 through September 27, 2010.  (Doc. # 1-11).  Pursuant to Schedule #3, Appalachian Fuels was required to make monthly lease payments of $101,301.91 from April 1, 2007 through April 1, 2010.  (Doc. # 1-12).

---

[2]  This lease is referred to as the "First" or "FNCC" lease.

[3]  This lease is referred to as the "Second" or "GATX" lease.

On September 11, 2006, ECR, Illinois Holding and Illinois Fuel, executed identical guaranties under the FNCC lease "absolutely unconditionally and irrevocably guarantee[ing] ... the full and prompt payment and performance by [Appalachian Fuels] of all [o]bligations" under the lease. (Docs. # 1-6, 1-7, 1-8). The guaranties specifically provided:

> Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. Guarantor unconditionally and irrevocably guarantees to FNCC and it's [sic] assigns the prompt payment in full of all indebtedness and obligations of every kind and nature now and hereafter owing by [Appalachian Fuels] to FNCC under the Agreements as well as any other obligations and indebtedness which [Appalachian Fuels] now owes or may hereafter incur to FNCC under any other agreements ... . FNCC shall not be required to pursue any right or remedy it may have against [Appalachian Fuels] under the Lease Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against [Appalachian Fuels]) before enforcing this Guaranty against Guarantor.

(Docs. # 1-6, 1-7, 1-8). These guaranties contained California choice of law provisions. *Id.*

On November 14, 2005, ECR, along with Appalachian Holding Co., Inc., executed a guaranty under the GATX Lease. (Doc. # 1-14). This guaranty specifically provided:

> The Guarantors hereby JOINTLY AND SEVERALLY and unconditionally and irrevocably guarantee the prompt payment in full of any and all now existing or hereafter arising indebtedness or obligations of [Appalachian Fuels] to GATX of every kind or nature, however arising. The foregoing guaranty shall also extend to any obligation which [Appalachian Fuels] may incur to GATX under any agreement ... made after the date hereof whether or not presently contemplated. The Guarantors JOINTLY AND SEVERALLY and unconditionally guarantee the prompt, full and faithful performance and discharge by [Appalachian Fuels] of each and every term, condition, agreement, representation, warranty and provision on the part of [Appalachian Fuels] contained in the Agreement or in any modification, amendment or substitution thereof ... . Each Guarantor shall, on demand, reimburse GATX for all expenses, collection charges, court costs and

reasonable attorney's fees incurred by GATX in endeavoring to collect or enforce any of GATX's rights and remedies against [Appalachian Fuels] and/or any of the Guarantors ... . The Guarantors shall be jointly and severally responsible for payment of an amount equal to at least one and one half (1.5%) percent monthly or the highest rate permitted by law of the total outstanding obligations due by the Debtor to GATX until paid in full.

(Docs. # 1-14, at 2). This guaranty contained a Kentucky choice of law provision. *Id.*

Appalachian Fuels defaulted on both the FNCC and GATX leases when it stopped making payments on all three associated equipment schedules in January 2009. On April 1, 2009, GATX sent Appalachian Fuels and each of the guarantors a notice of default for each equipment schedule. (Docs. # 62-8, at ¶ 27; 62-8). The notices stated that the past due rental payments and late charges under each equipment schedule were due by April 10, 2009 or GATX would pursue its remedies under the Leases. (Doc. # 62-8). Thereafter, GATX filed the instant action on May 15, 2009. (Doc. # 1). When payments continued to be missed, GATX terminated the Leases. (Doc. # 62-5, at ¶¶ 30-31).

The FNCC Lease provides that if Appalachian Fuels fails to pay any rent or other sums under the Lease on or before the date when they become due, a late charge of five percent (5%) of such delinquent amount will be assessed. (Doc. # 1-2, at 2). The FNCC lease contains a liquidated damages provision in the event of default allowing GATX to recover "a sum equal to (A) any unpaid Rent due prior to the [termination of the lease] (together with interest on such amount at the lesser of eighteen percent per annum or the maximum permitted by law from the [termination date] to the date of actual payment), plus (B) the Stipulated Loss Value." *Id.* at 4. The FNCC Lease also provides that Appalachian Fuels shall be liable for all reasonable costs, expenses and legal fees incurred in enforcing GATX's rights under the lease. *Id.* Pursuant to Equipment Schedule #6, "Stipulated Loss

Value" means "as of the date of its calculation, the sum of the present value of all future Rent owed discounted to the date of payment by Lessee at a per annum rate of interest equal to 3%." (Doc. # 1-3, at 4).

The GATX Lease allows GATX to recover late fees for any missed rental payments. Specifically, it provides, "[i]f rent is not paid within ten (10) days of its due date, Lessee agrees to pay a late charge of five cents ($.05) per dollar on, and in addition to, the amount of such rent ... ." (Doc. # 1-10, at 1). The GATX Lease also contains a liquidated damages provision in the event of default. It states that upon default:

> Lessee shall immediately pay to Lessor without further demand as liquidated damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment (calculated as of the Rent Payment Date prior to the declaration of default), and all rents and other sums then due under this Agreement and all Schedules. ... Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale. ... The proceeds of sale, lease or other disposition, if any, shall be applied in the following order of priorities: (i) first, to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (ii) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee under this Agreement; then, (iii) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (iv) any surplus shall be retained by Lessor.

(Doc. # 1-10, at 5-6). Equipment Schedules #1 and #3 state that the "Stipulated Loss Value" for any unit of equipment "shall be the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the [Stipulated Loss Value Table]" contained in the relevant equipment schedule (Docs. # 1-11, at 5; 1-12, at 4). Additionally, the GATX Lease provides that Appalachian Fuels must pay GATX's actual attorneys' fees incurred in connection with the enforcement of GATX's rights and remedies under the Lease. (Doc. # 1-10, at 6). Finally, the GATX Lease requires Appalachian Fuels to pay

eighteen percent (18%) interest per annum on any rent or other amount not paid when due, from the due date until paid. *Id.* at 11.

## II.  ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to

6

direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## B.    Breach of Contract

There are no disputed material issues of fact regarding Appalachian Fuels' breach of its contractual obligations under both the FNCC and GATX Leases and the applicable equipment schedules.  Beginning in January 2009, Appalachian Fuels failed to make timely monthly rental payments to GATX for leased equipment under all three schedules and ultimately stopped making payments altogether.  The continued failure to make monthly rental payments resulted in Appalachian Fuels' default and subsequent termination of the Leases.

## C.    Guaranties

### 1.    FNCC Lease Guaranties

Under California law, guaranty contracts are construed in the same way as other contracts, "the main object being to ascertain and effectuate the intention of the parties." *River Bank Am. v. Diller*, 45 Cal. Rptr. 2d 790, 797-98 (Cal. Ct. App. 1995) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Waters*, 26 Cal. Rptr. 9, 11 (Cal. Dist. Ct. App. 1962)). Where the language is clear, a guaranty contract is interpreted without regard to extrinsic evidence.  *Cent. Bldg., LLC v. Cooper*, 26 Cal. Rptr. 212, 216 (Cal. Ct. App. 2005).  "When a guaranty agreement incorporates another contract, the two documents are read together and 'construed fairly and reasonably as a whole according to the intention of the parties.'" *Id.* (quoting *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407, 413 (Cal. 1999))

(parentheticals omitted).

In the instant case, Defendants ECR, Illinois Fuel and Illinois Holding executed guaranties that specifically provided:

> Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. Guarantor unconditionally and irrevocably guarantees to [GATX] and it's [sic] assigns the prompt payment in full of all indebtedness and obligations of every kind and nature now and hereafter owing by [Appalachian Fuels] to [GATX] under the Agreements as well as any other obligations and indebtedness which [Appalachian Fuels] now owes or may hereafter incur to [GATX] under any other agreements ... . [GATX] shall not be required to pursue any right or remedy it may have against [Appalachian Fuels] under the Lease Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against [Appalachian Fuels]) before enforcing this Guaranty against Guarantor.

(Docs. # 1-6, 1-7, 1-8). The language of the guaranties are clear and unambiguous. The Defendants absolutely guaranteed the prompt payment of all of Appalachian Fuels' obligations pursuant to the FNCC Lease and any corresponding equipment schedules. Additionally, GATX was not required to first pursue any right or remedy against Appalachian Fuels before enforcing the guaranties against the Defendant guarantors. Furthermore, Defendants have not provided this Court with any evidence that the guaranties, as signed, have been distorted in any way or that the circumstances surrounding their creation warrant any equitable relief. Therefore, no genuine dispute of material fact exists to Defendants' ECR, Illinois Fuel and Illinois Holding liability for Appalachian Fuels' debts to GATX under the FNCC Lease.

### 2. GATX Lease Guaranty

Under Kentucky law, a guarantor's rights and obligations are dependent upon what the parties contracted to do. *McGowan v. Well's Trustee*, 213 S.W. 573, 576 (Ky. 1919).

Two types of guaranty classifications exist in Kentucky: (1) one for payment, an absolute guaranty, or (2) one for collection, a conditional guaranty.  *Id.* at 576-77; *see also Liberty Nat'l Bank & Trust Co. v. Russ*, 668 S.W.2d 567, 568 (Ky. Ct. App. 1984).  "A guaranty of payment is where the guarantor undertakes unconditionally that the debtor will pay," whereas "a conditional guaranty imports the happening of some contingency other than the default of the principal debtor."  *Coons v. Bank of Commerce*, 26 S.W.2d 15, 17 (Ky. 1930); *see also APL, Inc. v. Ohio Valley Aluminum, Inc.*, 839 S.W.2d 571, 573 (Ky. Ct. App. 1992) ("an absolute guaranty is a contract by which the guarantor promises that if the debtor does not perform his obligation or obligations, the guarantor will perform some act...to or for the benefit of the creditor, irrespective of any additional contingencies," and a "conditional guaranty...contemplates as a condition of the guarantor's liability the happening of some contingent event other than the default of the principal debtor, or the performance of some act on the part of the creditor.").  In other words, an absolute guaranty is an unqualified promise of payment or performance upon default of the principal.  *McGowan*, 213 S.W. at 577.

An absolute guaranty generally takes the form of a promise to pay the debt at maturity if not paid by the principal debtor.  *Yager v. Ky. Title Co.*, 66 S.W. 1027, 1028 (Ky. 1902).  If the principal debtor fails to make payment, the creditor has the right to proceed against the guarantor immediately upon default, and "[t]he guarantor's liability is dependent upon the same rule of law by which the liability of one who has broken his contract is determined."  *Id.*

Here, the language of the guaranty is facially unqualified.  ECR signed a guaranty that states in relevant part:

The Guarantors hereby JOINTLY AND SEVERALLY and unconditionally and irrevocably guarantee the prompt payment in full of any and all now existing or hereafter arising indebtedness or obligations of [Appalachian Fuels] to GATX of every kind or nature, however arising. The foregoing guaranty shall also extend to any obligation which [Appalachian Fuels] may incur to GATX under any agreement ... made after the date hereof whether or not presently contemplated. The Guarantors JOINTLY AND SEVERALLY and unconditionally guarantee the prompt, full and faithful performance and discharge by [Appalachian Fuels] of each and every term, condition, agreement, representation, warranty and provision on the part of [Appalachian Fuels] contained in the Agreement or in any modification, amendment or substitution thereof ... . Each Guarantor shall, on demand, reimburse GATX for all expenses, collection charges, court costs and reasonable attorney's fees incurred by GATX in endeavoring to collect or enforce any of GATX's rights and remedies against [Appalachian Fuels] and/or any of the Guarantors ... . The Guarantors shall be jointly and severally responsible for payment of an amount equal to at least one and one half (1.5%) percent monthly or the highest rate permitted by law of the total outstanding obligations due by the Debtor to GATX until paid in full.

(Doc. #1-14, at 2). As seen from the excerpt above, the plain language of the guaranty indicates that it is an absolute guaranty, which does not contemplate any additional contingency beyond Appalachian Fuels' default as a condition of Defendant ECR's liability. Again, ECR makes no effort to dispute its liability under the guaranty. Therefore, no genuine dispute of material fact exists to Defendant ECR's liability for Appalachian Fuels' debts to GATX under the GATX Lease.

## D. Liquidated Damages

### 1. FNCC Lease (Equipment Schedule #6)

The California Commercial Code–Leases, Division 10, Cal. Com. Code §§ 10101 *et seq.*("Division 10"), codifies the law with respect to leases of goods. Division 10 "applies to any transaction, regardless of form, that creates a lease." Cal. Com. Code § 10102. Damages for a lessee's default may be liquidated in the lease agreement subject to and

in compliance with California Civil Code § 1671. *Id.* § 10504(a). If the lease provides for liquidated damages but does not comply with Civ. Code § 1671, the remedies provided in Division 10 may still be obtained. *Id.* § 10504(b). Civil Code § 1671(b) provides that a liquidated damages clause is valid "unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). A liquidated damages provision is generally considered unreasonable and therefore unenforceable if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would result from a breach. *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 488 (Cal. 1998). Such a clause would be considered an unlawful penalty. *Id.* "The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract." *Id.*

Defendants argue that Plaintiff's calculation of damages is improper because it would allow Plaintiff to recover far more than it would have received had the FNCC Lease been performed. In support of their argument, Defendants contend that under California law, damages for a breach of contract equal the amount that would place the injured party in the same position it would have been had the contract been performed. While Defendants statement of the common law is accurate, the FNCC Lease in the present case is governed by the California Commercial Code. *See* Cal. Com. Code §§ 10101 *et seq.* The California Commercial Code provides the lessor's remedies in the event of the lessee's default, § 10523, and also allows the parties to liquidate damages in the lease agreement subject to and in compliance with California Civil Code § 1671. § 10504(a). Pursuant to the California Commercial Code and California Civil Code § 1671, a liquidated damages

clause is valid "unless *the party seeking to invalidate the provision* establishes that the provision was *unreasonable under the circumstances existing at the time the contract was made.*" Cal. Civ. Code § 1671(b) (emphasis added).

Here, the parties contemplated damages in the event of Appalachian Fuels' default in advance, and the FNCC Lease sets forth the parties' agreed method of calculating damages. That method will govern unless Defendants can establish that it was unreasonable under the circumstances existing at the time the Lease Agreement was made and therefore unenforceable, in which case, GATX would be entitled to statutory remedies pursuant to the California Commercial Code, not common law. *See* Cal. Com. Code §§ 10523, 10528.

### a.    Stipulated Loss Value

The FNCC Lease provides that upon default, GATX may recover as liquidated damages "a sum equal to (A) any unpaid Rent due prior to the Remedy Date (together with interest on such amount at the lesser of eighteen percent per annum or the maximum permitted by law from the Remedy Date to the date of actual payment), plus (B) the Stipulated Loss Value." (Doc. # 1-2, at 4). Equipment Schedule #6 states that the "Stipulated Loss Value" equals "as of the date of its calculation, the sum of the present value of all future Rent owed discounted to the date of payment by Lessee at a per annum rate of interest equal to 3%."[4] (Doc. # 1-3, at 4).

---

[4] On April 1, 2009, GATX sent Appalachian Fuels and each of the guarantors a notice of default for Equipment Schedule #6 under the FNCC Lease. (Doc. # 62-8). The notice stated that the past due rental payments and late charges under Equipment Schedule #6 were due by April 10, 2009 or GATX would pursue its remedies under the FNCC Lease. *Id.* At oral argument, however, Plaintiff's counsel revealed that after those notices were sent, the parties continued to negotiate in hopes that Appalachian Fuels would be able to satisfy its obligations under the Lease

Under Equipment Schedule #6, Plaintiff expected to receive monthly rental payments of $150,105.00 from March 21, 2007 to November 21, 2009–a total of 33 months. (Doc. # 1-4, at 2). Plaintiff terminated the FNCC Lease on August 25, 2009. At the time of termination, there were three future rental payments still due pursuant to the lease (September, October and November 2009). Therefore, the stipulated loss value equals $450,315.00 ($150,105.00 x 3), exclusive of any discounting to present value. Had Appalachian Fuels or the guarantors sought to pay this amount immediately upon termination of the lease, the amount would have been discounted to the date of payment. However, these rental payments are no longer "future" rental payments–they are all long past due. Therefore, any discounting to present value is unnecessary[5], and GATX is entitled to $450,315.00 in stipulated loss value damages.

### b. Rental Payments and Late Charges

As stated above, in addition to the stipulated loss value, the FNCC Lease provides that GATX is entitled to recover any past due rental payments prior to the "Remedy Date"–which, for reasons discussed above, is August 25, 2009– plus a 5% late charge on any payment not made on or before its due date. (Doc. # 1-2, at 2, 4). Plaintiff alleges that

---

Agreement. When negotiations turned futile, GATX then considered Appalachian Fuels to be in default and terminated the equipment schedule under the Lease Agreement. Therefore, GATX used August 25, 2009 in place of the "Remedy Date" for calculating damages pursuant to Equipment Schedule #6. Defendants did not object to the use of this date as it benefits Defendants and results in a lesser degree of damages. While it could be argued that April 10, 2009 was the actual "Remedy Date," GATX did not consider Appalachian Fuels to be in default until late August 2009, and Defendants did not argue to the contrary. Therefore, in the computation of damages, the Court will utilize August 25, 2009 as the "Remedy Date" for Equipment Schedule #6.

[5] While Defendants argued in their written response that discounting is necessary in this situation, Defendants' counsel withdrew this argument at oral argument and agreed to the amount of stipulated loss value damages under the FNCC Lease.

Appalachian Fuels missed eight rental payments prior to the termination of the equipment schedule on August 25, 2009. (Doc. # 62-9). Defendants do not dispute this assertion. Therefore, Plaintiff is entitled to recover $1,200,840.00 in missed rental payments ($150,105.00 x 8).

Plaintiff also alleges that seven of the eight missed payments must be assessed a 5% late charge ($7,505.25) because they were not made on or before their due dates.[6] Furthermore, Plaintiff alleges that Appalachian Fuels had one outstanding late charge from a payment that was ultimately made but not made on or before its due date (payment for December 2008). (Doc. # 62-9, at 3). Defendants do not dispute that Appalachian Fuels did not make these payments on or before their due dates. However, Defendants submit that a late fee for the first missed payment pursuant to Schedule #6 may be appropriate, but any late fees incurred thereafter are inappropriate because, at that point, Appalachian Fuels was in default on the agreements. For reasons discussed more thoroughly in Section II. D. 2. b., *infra*, the Court disagrees. Consequently, Plaintiff is entitled to $60,042.00 in late charges under Equipment Schedule #6 ($7,505.25 x 8).

### c. Interest

While federal law controls post-judgment interest, federal courts sitting in diversity apply state law in assessing prejudgment interest. *Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996). Under California law, "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and

---

[6] Despite the fact that the FNCC Lease allows a late charge for any payment not made *on or before its due date*, Plaintiff has applied a ten-day grace period when assessing late charges. Therefore, the last missed rental payment before termination of the lease was not assessed a late charge because, on the date of termination, it was only four days late.

the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day ... ." Cal. Civ. Code § 3287(a). Absent a contractual provision, the statutory rate of prejudgment interest in California is ten percent per annum. § 3289(b); *see also Michelson v. Hamada*, 36 Cal. Rptr. 2d 343, 353 (Cal. Ct. App. 1994).

In the FNCC Lease, the parties agreed that upon default, "any unpaid Rent due prior to the Remedy Date" shall bear interest at a rate of eighteen percent per annum "from the Remedy Date to the date of actual payment ... ." (Doc. # 1-2, at 4). Moreover, the FNCC Lease provides that any late charges "shall be deemed Rent." *Id.* at 2. Given the language of the lease agreement, GATX is therefore entitled to prejudgment interest at eighteen percent (18%) per annum on the past due rental payments and any unpaid late charges prior to the Remedy Date.[7]

Plaintiff contends that the interest for Equipment Schedule #6 on past due rental payments and late fees totals $438,172.43.[8] Plaintiff calculated the interest from the time the payments were due until April 29, 2011. (Plf. Hearing Ex. 1). While Defendants generally oppose Plaintiff's calculation of damages, they make no effort to contest Plaintiff's entitlement to prejudgment interest or the amount allegedly due. Therefore, Plaintiff is entitled to an award of prejudgment interest pursuant to the FNCC Lease Equipment

---

[7] The FNCC Lease does not allow eighteen percent interest on the stipulated loss value ("Stipulated Loss Value" means as of the date of its calculation, the sum of the present value of all future Rent owed discounted to the date of payment by Lessee at a per annum rate of interest equal to 3%). (Doc. # 1-3, at 4). At oral argument, Plaintiff withdrew any claim for interest on the stipulated loss value amount under the FNCC Lease.

[8] The Court arrived at this calculation by subtracting $123,176.57 from the Plaintiff's original calculation of interest ($561,349.00) to reflect an interest amount on the unpaid rental payments and late charges only. This amount does not include any interest on the stipulated loss value damages.

Schedule #6 in the amount of $438,172.43.

### d.    Equipment Deficiency

The FNCC Lease also allows Plaintiff to recover "any deficiency in the disposition of the Equipment."  (Doc. # 1-2, at 4).  Plaintiff claims that the book residual value of the Schedule #6 equipment totaled $1,900,000.00.  At oral argument, Plaintiff submitted an exhibit detailing how that figure was computed.  (Plf. Hearing Ex. 2).  Defendants did not dispute this amount and, after reviewing the exhibit, the Court finds that the amount is reasonable, especially considering that the equipment actually sold for $2,030,000.00. (Plf. Hearing Ex. 1).  GATX also incurred $175,900.00 in commission and costs related to the disposition of the equipment.  *Id.*  Thus, the total net sales price for the Schedule #6 Equipment was $1,854,100.00, resulting in a $45,900.00 deficiency ($1,900,000.00 - $1,854,100.00).  Consequently, Plaintiff is entitled to $45,900.00 for a deficiency in the disposition of the Schedule #6 Equipment.

### 2.    GATX Lease (Equipment Schedules #1 and #3)

Under Kentucky law, Article 2A of the Uniform Commercial Code (UCC) governs any transaction that creates a lease involving goods.  K.R.S. § 355.2A-102; *see also Hertz Commercial Leasing Corp. v. Joseph*, 641 S.W.2d 753, 757 (Ky. Ct. App. 1982).  The UCC serves as a default rule and expressly provides that upon a lessee's default, a lessor may "[e]xercise any other rights or pursue any other remedies provided in the lease contract."  K.R.S. § 355.2A-523(1)(f).  Furthermore, the UCC provides that "[d]amages payable by either party for default ...may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default

... ." K.R.S. § 355.2A-504(1). Consequently, if the parties agree on the method of calculating damages in the event of a breach, the lease agreement controls unless it does not comply with K.R.S. § 355.2A-504(1).

Defendants argue that Plaintiff's calculation of damages is improper because it would allow Plaintiff to recover far more than it would have received had the GATX Lease been performed. In support of their argument, Defendants contend that under Kentucky law, damages for a breach of contract equal the sum that would place the injured party in the same position it would have been had the contract been performed. While Defendants statement of the common law is accurate, the GATX Lease is governed by Article 2A of the UCC. *See* K.R.S. § 355.2A-102. As discussed above, the UCC specifies the lessor's remedies upon default and further allows for the parties to liquidate damages in the lease agreement in the event of a default. The only requirement is that the amount or formula is reasonable in light of the then anticipated harm caused by the default. K.R.S. § 355.2A-504. Here, the parties contemplated damages in the event of Appalachian Fuels' default in advance, and the Lease Agreement sets forth the parties' agreed method of calculating damages. That method will govern unless found to be unreasonable and therefore unenforceable, in which case, GATX would be entitled to statutory remedies pursuant to Article 2A, not common law. *See* K.R.S. §§ 355.2A-523, 2A-528.

### a. Stipulated Loss Value

In the present case, the GATX Lease authorizes, upon Appalachian Fuels' default, the recovery of the stipulated loss value of the equipment. The stipulated loss value for any unit of equipment is equal to the Capitalized Lessor's Cost of such unit multiplied by the

appropriate percentage derived from the applicable equipment schedule. This value is calculated as of the monthly rental date preceding the declaration of default.[9]

Article 2A of the UCC specifically approves of the use of a formula, as well as an amount, for the stipulation of liquidated damages. U.C.C. § 2A-504(1); K.R.S. § 355.2A-504(1). The official comments to the UCC list several liquidated damages formulas that have commonly been used in leasing practice, including stipulated loss or stipulated damage schedules. U.C.C. §2A-504 cmt. 3. Tax indemnities, costs, interest and attorney's fees are often included, as well. *Id.* Indeed, Kentucky courts have long recognized that liquidated damages are a "useful commercial tool to avoid litigation to determine actual damages." *Mattingly Bridge Co., Inc. v. Holloway & Son Constr. Co.*, 694 S.W.2d 702, 705 (Ky. 1985). However, courts must make individual determinations on a case-by-case basis as to whether liquidated damages provisions are enforceable. In determining whether the GATX Lease liquidated damages provision is enforceable, it is necessary to assess the reasonableness of the parties' estimated probable loss resulting from a default at the time

---

[9] On April 1, 2009, GATX sent Appalachian Fuels and each of the guarantors a notice of default for both equipment schedules under the GATX Lease. (Docs. # 62-8). The notices stated that the past due rental payments and late charges under each equipment schedule were due by April 10, 2009 or GATX would pursue its remedies under the Lease. *Id.* As stated above, however, Plaintiff's counsel revealed that after those notices were sent, the parties continued to negotiate in hopes that Appalachian Fuels would be able to satisfy its obligations under the Lease Agreement. When negotiations turned futile, GATX then considered Appalachian Fuels to be in default and terminated the equipment schedules under the GATX Lease. Therefore, GATX used August 25, 2009 and September 3, 2009 as the dates of default for Equipment Schedule #1 and Equipment Schedule #3, respectively. Again, Defendants did not object to the use of these dates as they benefit Defendants and result in a lesser degree of damages. While it could be argued that April 1, 2009 was the actual "declaration of default," GATX did not consider Appalachian Fuels to be in default until late August/early September 2009, and Defendants did not argue to the contrary. Therefore, in the computation of damages, the Court will utilize August 25, 2009 as the date of default for Equipment Schedule #1 and September 3, 2009 as the date of default for Equipment Schedule #3.

the Lease was created.

### i.     Equipment Schedule #1

Under Equipment Schedule #1, Plaintiff expected to receive monthly rental payments of $46,144.37 from October 27, 2005 to September 27, 2010–a total of 60 months.  Thus, Plaintiff expected to receive $2,768,662.20 in rent over the term of the Lease.  Plaintiff also expected Appalachian Fuels to return the equipment at the expiration of the Lease, unless  a purchase or renewal option was exercised.  Therefore, Plaintiff expected to receive $2,768,662.20 and the fair market value of the equipment upon the expiration of the Lease.

Plaintiff now requests $1,061,754.00 in stipulated loss value of the Schedule #1 equipment.  (Doc. # 62-1, at 14).  In calculating this value, Plaintiff utilizes the formula provided in Equipment Schedule #1 that takes into account the anticipated return of the equipment, initially financed at $2,477,550.00, and the anticipated depreciation of the value of the equipment on the date of the termination of the Lease.  The Capitalized Lessor's Cost ($2,477,550.00) is multiplied by the percentage found in the Stipulated Loss Value Table for the rent date prior to the termination date of August 25, 2009 (42.855%) to get $1,061,754.05.

Based upon a careful review of the parties submissions and the GATX Lease itself, the Court concludes that the stipulated loss value is reasonable in light of the parties' anticipated harm caused by a default (calculated at the time the parties entered into the lease).  The value of a lessor's interest in leased equipment at the expiration of a lease depends upon the physical condition of the equipment and the market conditions at the time.  Because these values are uncertain and any calculation of damages would depend

19

on these figures, a stipulated loss value provision, such as the one contained in the GATX Lease, is more likely to be considered a liquidated damages clause rather than a penalty. Additionally, Defendants have failed to prove that the stipulated loss value table was an unreasonable calculation of damages at the time the GATX Lease was agreed to. Moreover, Defendants have not submitted any evidence to suggest that GATX had more bargaining power than Appalachian Fuels.  Both GATX and Appalachian Fuels were experienced negotiators, making it highly unlikely that the provision was to constitute a penalty.  Former Appalachian Fuels employee, Brent Tackett, who negotiated the GATX Lease, testified that he looked at several financing and leasing companies prior to signing the Lease Agreement.  (Doc. # 75-9, at 3).  Furthermore, he testified that he was a skilled negotiator for these types of leases and had access to legal counsel.  *Id.* at 3-4. Consequently, based on the foregoing factors, the Court finds that the stipulated loss value provision bears a reasonable relationship to the anticipated harm flowing from a breach of the Lease Agreement, and GATX is entitled to $1,061,754.05 in stipulated loss value damages for Equipment Schedule #1.

### ii.      Equipment Schedule #3

Under Schedule #3, Plaintiff expected to receive monthly rental payments of $101,301.91 from April 1, 2007 to April 1, 2010, 2010–a total of 36 months.  Thus, Plaintiff expected to receive $3,646,868.76 in rent over the term of the Lease.  Plaintiff also expected Appalachian Fuels to return the equipment at the expiration of the Lease, unless a purchase or renewal option was exercised.  Therefore, Plaintiff expected to receive $3,646,868.04 and the fair market value of the equipment upon the expiration of the Lease.

Plaintiff requests $1,422,698.00 in stipulated loss value of the Schedule #3

equipment. (Doc. # 62-1, at 14). In calculating this value, Plaintiff utilizes the formula provided in Equipment Schedule #3 that takes into account the anticipated return of the equipment, initially financed at $3,287,955.00, and the anticipated depreciation of the value of the equipment on the date of the termination of the Lease. The Capitalized Lessor's Cost ($3,287,955.00) is multiplied by the percentage found in the Stipulated Loss Value Table for the rent date prior to the termination date of September 3, 2009 (43.27%) to get $1,422,698.13. As stated herein, based upon a careful review of the parties submissions and the GATX Lease itself, the Court concludes that the stipulated loss value under Equipment Schedule #3 is reasonable in light of the parties' anticipated harm caused by a default, and GATX is entitled to $1,422,698.13.

### b. Rental Payments and Late Charges

In addition to the stipulated loss value, the GATX Lease provides that GATX is entitled to recover any missed rental payments prior to the termination of the Lease plus a 5% late charge on any payment not made within ten days of its due date. (Doc. # 1-10, at 2, 6).

### i. Equipment Schedule #1

Plaintiff alleges that Appalachian Fuels missed six rental payments prior to the termination of the equipment schedule on August 25, 2009. (Doc. # 62-9). Defendants do not dispute this assertion. Therefore, Plaintiff is entitled to recover $276,866.22 in missed rental payments ($46,144.37 x 6).

Plaintiff also alleges that all missed payments must be assessed a 5% late charge ($2,307.22) because they were not made within ten days of their due dates. Furthermore,

Plaintiff alleges that Appalachian Fuels had two outstanding late charges from payments that were ultimately made but not made within ten days of their due date (payments for December 2008 and January 2009). (Doc. # 62-9). Defendants do not dispute that Appalachian Fuels did not make these payments within ten days of their due date. However, Defendants argue that permitting Plaintiff to recover late fees after Appalachian Fuels' default would amount to an unenforceable penalty. Defendants submit that a late fee for the first missed payment on each schedule may be appropriate, but any late fees incurred thereafter are inappropriate because, at that point, Appalachian Fuels was in default on the agreements. The Court disagrees.

According to GATX, Appalachian Fuels first defaulted on the lease at the beginning of January 2009, when it failed to make its December 2008 rental payment within ten days of its due date. However, Appalachian Fuels ultimately paid this rental payment, and GATX did not terminate the Lease at that time. Additionally, Appalachian Fuels failed to make its January 2009 rental payment within ten days of its due date and was, again, assessed a late charge. Nevertheless, Appalachian Fuels ultimately paid this rental payment, and the Lease was not terminated. According to Defendant's logic, since Appalachian Fuels defaulted on the lease in January 2009 and was assessed a late charge for the December 2008 rental payment, it should not have also been assessed a late charge for the January 2009 late payment and any subsequent late payments. Clearly, such a limitation would be inequitable as it would allow Appalachian Fuels to continuously make late rental payments without penalty, not to mention it is inconsistent with the terms of the Lease Agreement.

GATX terminated Equipment Schedule #1 on August 25, 2009 and, thereafter, repossessed and auctioned the equipment. Therefore, GATX was entitled to receive late

fees associated with any late or missed rental payments until the schedule was terminated. GATX only charged late fees on late or missed rental payments until August 6, 2009 (10 days after the July 2009 rental payment was due). Indeed, the Kentucky Court of Appeals has allowed a lessor to recover any unpaid late charges as long as they accrued before repossession of the goods. *See Moore v. Ford Motor Credit Co.*, 778 S.W.2d 657, 660 (Ky. Ct. App. 1989). Defendants have failed to cite any authority to support their position. The Court finds that the late fee charges corresponding to any late or missed rental payment prior to the August 25, 2009 termination date are reasonable damages pursuant to the Lease Agreement and not an unenforceable penalty. Consequently, Plaintiff is entitled to $18,457.76 in late charges under Equipment Schedule #1 ($2,307.22 x 8).

### ii.    Equipment Schedule #3

Plaintiff alleges that Appalachian Fuels missed seven rental payments prior to the termination of the equipment schedule on September 3, 2009. (Doc. # 62-9). Defendants do not dispute this assertion. Therefore, Plaintiff is entitled to recover $709,113.37 in missed rental payments ($101,301.91 x 7).

Again, Plaintiff also alleges that six of the seven missed payment must be assessed a 5% late charge ($5,065.10) because they were not made within ten days of their due dates.[10] Furthermore, Plaintiff alleges that Appalachian Fuels had two outstanding late charges from payments that were ultimately made, but not made within ten days of their due date (payments for January 2009 and February 2009). (Doc. # 62-9). Defendants do

---

[10] The seventh missed payment was due on September 1, 2009. It was not assessed a 5% late charge because the equipment schedule was terminated on September 3, 2009, only two days after its due date.

not dispute that Appalachian Fuels did not make these payments within ten days of their due date. Furthermore, for the reasons stated above, Defendants' argument that the late fees constitute an unenforceable penalty is misplaced. Therefore, Plaintiff is entitled to $40,520.80 in late charges under Equipment Schedule #3 ($5,065.10 x 8).

### c. Interest

While federal law controls post-judgment interest, federal courts sitting in diversity apply state law in assessing prejudgment interest. *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000). Under Kentucky law, when claims involve liquidated damages, "prejudgment interest follows as a matter of course." *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991); *see also Poundstone v. Patriot Coal Co., Ltd.*, 485 F.3d 891, 901 (6th Cir. 2007). Although unclear at times, an amount is characterized as liquidated if it is "[m]ade certain or fixed by agreement of parties or by operation of law. Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price," whereas unliquidated damages are those "which have not been determined or calculated,...not yet reduced to a certainty in respect to amount." *Nucor*, 812 S.W.2d at 141 (citations omitted). As discussed above, in the GATX Lease, the parties agreed to a liquidated damages clause that fixed the amount of damages in the event of default. Furthermore, the Lease Agreement stated that "[a]ny rent or other amount not paid to [GATX] when due shall bear interest, from the due date until paid." (Doc. # 1-10, at 12). Therefore, as a matter of right, GATX is entitled to prejudgment interest.

Interest on such liquidated damages claims begins to run when the claim is due. *Hamilton v. Trans Union Settlement Solutions, Inc.*, 295 S.W.3d 844, 849 (Ky. Ct. App.

2009). Pursuant to statute, the legal rate of interest is eight percent (8%) per annum, but parties may agree, in writing, for the payment of interest in excess of that rate. K.R.S. § 360.010. In the GATX Lease, the parties agreed that "[a]ny rent or other amount not paid to Lessor when due shall bear interest, from the due date until paid, at the lesser of eighteen percent (18%) per annum or the maximum rate allowed by law. Such interest shall be in addition to [any] late charge[s]." (Doc. # 1-10, at 11).

While Defendants do not contest that the Lease provides for an 18% interest rate, Defendants, at oral argument, maintained that the interest should be calculated from the time the amounts were due until the date when the equipment was sold. Defendants' argument is unavailing. The plain language of the Lease is clear–any rent or other amount not paid to Lessor when due shall bear interest from the due date *until paid*. Given the language of the lease agreement, GATX is entitled to prejudgment interest at eighteen percent (18%) per annum on the past due rental payments prior to the termination of the Lease, the unpaid late charges, and the stipulated loss values of each equipment schedule until such amounts are paid.

Plaintiff alleges that the interest for Equipment Schedule #1 on past due rental payments and late fees totals $104,559.00 and on the unpaid stipulated loss value totals $244,022.00. Plaintiff contends that the interest for Equipment Schedule #3 on past due rental payments and late fees totals $258,428.00 and on the unpaid stipulated loss value totals $245,457.00. Plaintiff calculated the interest from the time the amounts were due until April 29, 2011. (Plf. Hearing Ex. 1). While Defendants generally oppose Plaintiff's calculation of damages, they make no effort to contest Plaintiff's entitlement to prejudgment

interest or the amount allegedly due. Therefore, Plaintiff is entitled to an award of prejudgment interest pursuant to the GATX Lease Equipment Schedules #1 and #3 in the amount of $852,466.00.

### d. Equipment Proceeds

The GATX Lease allows, but does not require, GATX to sell the leased equipment at a public or private sale. (Doc. # 1-10, at 6). However, should GATX decide to sell the equipment, the Lease provides that the proceeds of the sale shall be applied in the following order of priorities: (1) first, to pay all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (2) to the extent not previously paid by Appalachian Fuels, to pay GATX all sums due from Appalachian Fuels under the Lease; then, (3) to reimburse to Appalachian Fuels any sums previously paid by Appalachian Fuels as liquidated damages; and (4) any surplus shall be retained by GATX. *Id.* at 6-7.

### i. Equipment Schedule #1

GATX claims that it sold the equipment under Schedule #1 for an auction price of $315,000.00 and incurred $25,200.00 in commission and costs. (Doc. # 62-9, at 4). Therefore, it claims that the net sales price for the equipment was $289,800.00. Defendants do not dispute this amount. (Doc. # 71, at 3). Since Appalachian Fuels has not paid all sums due under Equipment Schedule #1, the sale proceeds will be applied against the damages owed to GATX pursuant to the Lease Agreement.

### ii. Equipment Schedule #3

GATX alleges that it sold the equipment under Schedule #3 for $600,000.00 and did

not incur any costs in doing so. (Doc. # 62-9, at 4). In their written response, Defendants disputed this amount and claimed that GATX actually sold the equipment for $1,200.000.00. (Doc. # 71, at 4). However, at oral argument, Plaintiff submitted an invoice for the sale of the Schedule #3 equipment. (Plf. Hearing Ex. No. 3). The invoice revealed that the equipment was indeed sold for $600,000.00, and Defendants did not dispute this evidence at oral argument. Therefore, since Appalachian Fuels has not paid all sums due under Equipment Schedule #3, the sale proceeds will be applied against the damages owed to GATX pursuant to the Lease Agreement.

**E.    Attorneys Fees**

Both leases provide for the recovery of attorneys fees incurred in connection with enforcing GATX's rights under the respective leases. Although Defendants do not contest the fact that the leases allow for such recovery, Defendants do challenge the amount of the fees sought to be recovered by Plaintiff. Upon consideration of the parties' submissions with respect to the recovery of attorneys fees, the Court finds that referral of this sole remaining issue to the presiding magistrate judge is warranted. **The issue of the proper amount of attorneys fees recoverable under the leases is hereby referred to the presiding magistrate judge at Ashland for preparation of a Report and Recommendation**.

**F.    Summary of Damages**

    **1.    FNCC Lease**

| Missed Rental Payments | $1,200,840.00 |
|---|---|
| Late Fees | $60,042.00 |

| | |
|---|---|
| **Stipulated Loss Value** | $450,315.00 |
| **Interest** | $438,172.43 |
| **Deficiency** | $45,900.00 |
| **TOTAL** | **$2,195,269.43** |

Therefore, pursuant to the terms of the FNCC Lease and the related guaranty agreements, Defendants ECR, Illinois Holding and Illinois Fuel are jointly and severally liable for damages in the amount of $2,195,269.43.

2. **GATX Lease**

 a. **Equipment Schedule #1**

| | |
|---|---|
| **Missed Rental Payments** | $276,866.22 |
| **Late Fees** | $18,457.76 |
| **Stipulated Loss Value** | $1,061,754.05 |
| **Interest on Missed Rental Payments and Late Fees** | $104,559.00 |
| **Interest on Stipulated Loss Value** | $244,022.00 |
| **Less Equipment Sale Proceeds** | ($289,800.00) |
| **TOTAL** | **$1,415,859.03** |

 b. **Equipment Schedule #3**

| | |
|---|---|
| **Missed Rental Payments** | $709,113.37 |
| **Late Fees** | $40,520.80 |
| **Stipulated Loss Value** | $1,422,698.13 |
| **Interest on Missed Rental Payments** | $258,428.00 |
| **Interest on Stipulated Loss Value** | $245,457.00 |

| | |
|---|---|
| **Less Equipment Sale Proceeds** | ($600,000.00) |
| **TOTAL** | **$2,076,217.30** |

Therefore, pursuant to the terms of the GATX Lease, Equipment Schedules #1 and #3 and the related guaranty agreement, Defendant ECR is liable for damages in the amount of $3,492,076.33.

### III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1)    Plaintiff GATX Corporation's Motion for Summary Judgment (Doc. # 62) is hereby **GRANTED**;

(2)    Pursuant to the terms of the FNCC Lease and the related guaranty agreements, Defendants Energy Coal Resources, Inc., Illinois Holding Company, Inc. and Illinois Fuel Company, LLC are hereby **JOINTLY AND SEVERALLY** liable for damages in the amount of **$2,195,269.43**.

(3)    Pursuant to the terms of the GATX Lease and the related guaranty agreement, Defendant Energy Coal Resources, Inc. is liable for damages in the amount of **$3,492,076.33**; and

(4)    The Court having reached the conclusion that judicial economy and efficiency would be best served by referring Plaintiff GATX Corporation's remaining claim for attorneys' fees to the presiding Magistrate Judge at Ashland, Plaintiff's claim for attorneys' fees is hereby **REFERRED**  to the Honorable Edward B. Atkins for review and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

This 7th day of June, 2011.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\Ashland\0-09-41 MOO Granting MSJ.wpd