UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 09-41-DLB

GATX CORPORATION,  PLAINTIFFS,

V.  **MAGISTRATE JUDGE'S REPORT
 & RECOMMENDATION**

APPALACHIAN FUELS, LLC, et al.,  DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

On June 7, 2011, District Judge David L. Bunning issued a Memorandum Opinion and Order granting the Plaintiff's motion for summary judgment. [R. 101]. In that Order, Judge Bunning also referred this matter to the undersigned for preparation of a Report and Recommendation on the Plaintiff's claim for attorneys' fees. [Id. at 29]. Because the Court has already determined that the contracts at issue allow for recovery of attorneys' fees, the only issue before the undersigned is the amount of attorneys' fees Plaintiff may recover.

I. BACKGROUND

This case arises from a breach of two mine equipment leases entered into by Appalachian Fuels, LLC. The action was brought by GATX against Appalachian Fuels for breach of contract and against thirteen co-defendant guarantors for breach of guaranties. Appalachian Fuels and nine of the corporate guarantors received bankruptcy protection. The individual guarantor, Larry Addington, entered into a settlement with GATX. This left three corporate guarantors, Energy Coal Resources, Inc. ("ECR"), Illinois Holding Company, Inc. ("Illinois Holding"), and Illinois Fuel

Company, LLC ("Illinois Fuel"), against whom judgment has been entered.[1]

The contracts entered into between the parties address the issue of attorneys' fees. The first lease provides that Appalachian Fuels shall be liable for all reasonable costs, expenses, and attorneys' fees incurred in enforcing the Plaintiff's rights under the lease. [R. 1, Attach. 1 at 4]. Furthermore, the guaranties executed by Defendants ECR, Illinois Holding, and Illinois Fuel state that these entities agreed "to pay upon demand all of [GATX's] costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against [GATX] or the Guarantor[s] concerning any matter arising out of or connected herewith ... ." [R. 1, Attach. 5-7 at 3].

The second lease provides that Appalachian Fuels must pay GATX's actual attorneys' fees incurred as a result of GATX enforcing its rights and remedies under the lease. [R. 1, Attach. 9 at 6]. The guaranty on this lease obligates the guarantors – ECR – to reimburse GATX for all reasonable attorneys' fees incurred by GATX in attempting to collect or enforce any of GATX's rights and remedies against Appalachian Fuels and/or any of the other Guarantors. [R. 1, Attach. 13 at 2]. Based on these agreements, GATX has asked the Court to award it fees and expenses totaling $421,258.31. [R. 97].

## II. APPLICABLE LAW

The first lease and related guaranties contain California choice of law provisions. The second lease and accompanying guaranties are governed by Kentucky law. The laws of both states provide that a party may recover attorneys' fees only if a contract or statute expressly provides for

---

[1] For a more detailed discussion of the facts underlying this case, see the Court's Memorandum Opinion and Order entered June 7, 2011. [R. 101].

such fees. <u>Aetna Cas. & Sur. Co. v. Commonwealth</u>, 179 S.W.3d 830, 842 (Ky. 2005); Cal. Code Civ. Proc. §§ 1021, 1033.5(a); Cal. Civ. Code § 1717. All of the relevant contracts in this matter expressly provide that GATX may recover attorneys' fees. Judge Bunning has already determined that GATX is entitled to recover attorneys' fees incurred as a result of this litigation. The only issue before the undersigned is the amount that may be recovered.

Pursuant to the doctrine of <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), federal law governs all procedural issues in this case, while state law governs substantive issues. The question before the Court is whether the amount of attorneys' fees that may be recovered is a procedural or substantive issue. Whether fees may be awarded at all is clearly a question of state law, <u>see</u> <u>Alyeska Pipeline Svc. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 260 n. 31 (1975), but whether state or federal law governs the amount of that award is a closer call. The Sixth Circuit has stated that

> the type and amount of documentation needed to support a request for attorneys' fees, relates only to conduct required by the parties and does not relate to the underlying merits of the claim. Accordingly, it is a requirement properly characterized as "procedural" under the doctrine of Erie and should be analyzed using Sixth Circuit law.

<u>General Elec. Co. v. Latin Am. Imports, S.A.</u>, 127 Fed. Appx. 157, 159 (6th Cir. 2005). Similarly, in the present case, the amount of fees that will ultimately be awarded does not relate to the underlying merits of the claim, but rather to the conduct of the parties in litigating the matter.

More recently, however, the court has stated that "[i]n diversity cases, attorneys' fees are governed by state law." <u>Hometown Folks, LLC v. S & B. Wilson, Inc.</u>, – F.3d –, 2011 WL 2566825, *11 (6th Cir. June 30, 2011). This includes the method used by a court to calculate the amount of an attorneys' fees award. <u>Id.</u> at 13. This conclusion is supported by decisions of other courts. <u>See, e.g.</u>, <u>Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.</u>, 600 F.Supp.2d 897, 913 (W.D. Mich.

3

2009) ("the assessment of the reasonableness of proposed attorneys' fees is a question of state law"); Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000).

The use of state law in this case raises considerable difficulties. The guaranties at issue are governed by the laws of two different states. It is impossible to determine, however, what percentage of counsel's efforts were devoted to the claims arising from each guaranty. Although detailed, the billing records submitted by GATX do not allow the Court to accurately calculate the number of hours counsel spent on each claim, and undoubtedly, many costs could be attributed equally to all claims. Fortunately, the rules governing attorneys' fees in Kentucky and California are similar, and it is unnecessary at this point to allocate the litigation costs to each claim.

### III. ATTORNEYS' FEES

Like the Sixth Circuit, both Kentucky and California only allow recovery of attorneys' fees that are reasonable. See Capitol Cadillac Olds, Inc. v. Roberts, 813 S.W.2d 287, 293 (Ky. 1991); Gorman v. Tassajara Dev. Corp., 178 Cal. App. 4th 44, 91-92 (Cal. Ct. App. 2009) (reasonable attorney fees authorized by contract awarded to prevailing party as fixed by the court); Cal. Civ. Code § 1717(a). Additionally, both have adopted the "lodestar" method used by the Supreme Court in Henlsey v. Eckerhart, 461 U.S. 424, 433 (1983), as a starting point in both statutory and contractual attorneys' fees claims. See Meyers v. Chapman Printing Co., Inc., 840 S.W.2d 814, 826 (Ky. 1992); Gorman, 178 Cal. App. 4th at 92; Sunstone Behavioral Health, Inc. v. Alameda County Medical Center, 646 F.Supp.2d 1206, 1212-13 (E.D. Cal. 2009) (applying Cal. Civ. Code § 1717 to determine reasonable attorneys' fee award in a diversity action for breach of contract). The

4

lodestar figure is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley, 461 U.S. at 433. In both states, the lodestar figure may then be adjusted based upon certain factors. Meyers, 840 S.W.2d at 826; Gorman, 178 Cal. App. 4th at 92.

**A.     Reasonable Hourly Rate**

In California, a reasonable hourly rate is the "prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type." Ketchum v. Moses, 17 P.3d 735, 742 (Cal. 2001) (emphasis in original). Furthermore, "the reasonable value of attorney services is variously defined as the 'hourly amount to which attorneys of like skill in the area would typically be entitled.'" Id. (quoting Serrano v. Unruh, 652 P.2d 985, 997 n. 31 (Cal. 1982)). Kentucky courts have not expressly addressed what constitutes a reasonable hourly rate, but have made clear that the party seeking attorneys' fees must "demonstrate that the amount sought is not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred." A & A Mechanical, Inc. v. Thermal Equip. Sales, Inc., 998 S.W.2d 505, 514 (Ky. App. 1999). The reduction of an attorney's hourly rate by the trial court has been upheld in Kentucky. See Louisville-Jefferson County Metro Gov't v. Martin, No. 2007-CA-1629-MR, 2009 WL 1636270, *15-16 (Ky. App. June 9, 2010) (reducing claimed hourly rate of $375.00 per hour to $200.00 per hour).

In this case, Defendants object to the hourly rates charged by attorneys at Plaintiff's Chicago-based firm, Kirkland & Ellis, LLP. GATX's reported legal fees include $110,667.50 for attorney Thomas Morel. Mr. Morel worked 161 hours on this case at varying hourly rates of $625, $695, and $745. Another Kirkland and Ellis attorney, Ashley Burden, worked 25.75 hours at $465 and $510 per hour. Defendants claim that such hourly rates "simply shock the senses and are patently excessive, unreasonable and constitute a windfall to the plaintiff that simply cannot be

5

allowed given the excessive nature of the damages sought." [R. 98 at 2].

The burden falls on GATX to show that hiring the Chicago-based attorneys was reasonable and that relying on local counsel was impracticable. See Nichols v. City of Taft, 155 Cal. App. 4th 1233, 1243-44 (Cal App. 2007). GATX argues that it was reasonable to hire Kirkland & Ellis because that firm regularly represents GATX in other matters. It further argues that Chicago-based counsel was only used for issues that required the services of a more experienced litigation firm and that local counsel was utilized whenever possible in order to reduce litigation costs.

While the undersigned appreciates the Plaintiff's decision to hire the same attorney it has utilized in other cases and acknowledges that a party's relationship with counsel is a factor in the analysis, GATX has failed to demonstrate either that an out-of-town specialist was necessary, or that the fees charged by Chicago-based counsel were reasonable in light of the nature of this matter. First, local counsel's performance in this matter was more than adequate. For example, local attorney Andrew Wood drafted and signed all of the pleadings in GATX's successful motion for summary judgment. [Rs. 62, 75]. Second, this case involves a relatively simple contract dispute. GATX has not pointed to any aspects of the case requiring specialized expertise that would justify the use of an attorney who charges rates three times that of local counsel.[2]

The undersigned therefore recommends that, for the purposes of the lodestar calculation, the rates of Plaintiff's Chicago-based attorneys be adjusted. Since the parties have not provided the

---

[2] Although the Defendants have not challenged the hourly rates charged by attorneys at the DelCotto Law Group, PLLC, the undersigned has reviewed the billing records and finds those rates to be reasonable. The DelCotto Law Group is based in Lexington, Kentucky and appears to have expertise in the area of bankruptcy law. Since bankruptcy issues played a significant role in this case, the undersigned finds that GATX's decision to hire this firm was reasonable and that the rates charged were likewise reasonable.

Court with evidence of the prevailing market rate in the local community, the undersigned further recommends adjustment based on the rates actually charged by GATX's local counsel. A rate of $225 per hour should be attributed to attorney Thomas Morel based on the rate charged by GATX's local counsel, Andrew Wood. A rate of $150 per hour should be attributed to attorney Ashley Burden based on the rate charged by associates at the Lexington, Kentucky firm hired by GATX.[3]

**B.** **Hours Reasonably Expended**

GATX is only entitled to fees for hours "reasonably expended" by its attorneys. Hensley, 461 U.S. at 434 (quoting S.Rep. No. 94-1011, p. 6 (1976)). The burden is on GATX to show that the claimed number of hours is reasonable. See Blum v. Stenson, 465 U.S. 886, 897 (1984). In this case, the Defendants have asked the Court to determine whether the number of hours spent by Plaintiff's counsel on this matter was excessive and whether some hours were expended in the duplication of services. In its discretion, the district court may reduce fees based on a finding that hours were excessive or duplicative. See Sunstone Behavioral Health, 646 F.Supp.2d at 1214. Similarly, Kentucky vests trial courts with wide discretion to determine what charges are reasonable. Roberts, 813 S.W.2d at 293.

The undersigned has conducted an *in camera* review of the Plaintiff's billing records and finds that the majority of hours expended were reasonable when the work was performed. However, there appears to be some duplication of services, in that both Kentucky and Chicago based counsel billed extensively for their communications with one another. Such inter-office communications are the type of inefficiency and duplication of services that may occur when a party hires multiple

---

[3] Although paralegals and support staff at Kirkland & Ellis expended minimal time on this case, the rates charged by these individuals will also be reduced to $85 per hour in line with the rates charged for paraglegal services by GATX's local counsel.

attorneys in different locations. A reduction of the fee award is warranted when attorneys and paralegals bill for overlapping meetings, phone calls, and conferences. See EnPalm, LCC v. Teitler Family Trust, 162 Cal. App. 4th 770, 774 (Cal. App. 2008) (trial court has discretion to reduce a prevailing party's attorneys' fees to the extent they were unnecessary); El Escorial Owners' Ass'n v. DLC Plastering, Inc., 154 Cal. App. 4th 1337, 1366-67 ("A court may substantially reduce fees where multiple counsel represent a party leading to a duplication of effort."); Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 161 (Cal. App. 2006). Additionally, some of the time entries submitted by GATX's counsel are vague and possibly excessive. For example, Wood & Wood has several hours of billing entries described simply as "Research", "Research file", "Organize file", "Document organization", "Review file", and the like. In light of these vague descriptions and the duplication of services, the undersigned recommends that the overall fee award be reduced by five percent.

**C.     Adjustments and Apportionment**

"After calculating the lodestar, the trial court 'shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.'" Sunstone Behavioral Health, 646 F.Supp.2d at 1213 (quoting PLCM Group v. Drexler, 997 P.2d 511, 518 (Cal. 2000)). Under California law, courts must consider "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." Drexler, 997 P.2d at 519 (citations omitted). In Kentucky, courts consider these factors: (1) amount and character of services rendered; (2) labor, time and trouble involved; (3) nature and importance of the litigation in which the services were rendered; (4)

8

responsibility imposed; (5) the amount of money or value of the property affected by the controversy, or involved in the employment, (6) skill, experience, professional character, and standing of the attorneys; and, (7) the results secured. Boden v. Boden, 268 S.W.2d 632, 633 (Ky. 1954).

In light of the reductions already made for GATX's non-local counsel, the duplication of services, and excessive hours, none of the above cited factors warrant further departure from the lodestar figure. Defendants, however, request that the amount of attorneys' fees be adjusted to reflect the fact that GATX settled its claim against the individual guarantor, Larry Addington. Defendants argue that they should not be held liable for litigation expenses incurred in connection with the claim against Addington, because Addington pursued a number of unique defenses that were irrelevant to the other guarantors.

The guaranty signed by ECR, states that "[e]ach Guarantor shall, on demand, reimburse GATX for all expenses, collection charges, court costs and reasonable attorneys' fees incurred by GATX in endeavoring to collect or enforce any of GATX's right and remedies *against the Debtor and/or any of the Guarantors* or any other persons liable thereto." [R. 1, Attach. 13 at 2] (emphasis added). By the terms of its agreement, ECR is liable for GATX's attorneys' fees incurred in pursuing a claim against ECR's co-guarantor, Larry Addington.

The question remains, however, of how to apportion the attorneys' fees award among ECR and the other Defendants. In Kentucky, courts are directed to apportion attorneys' fees between claims when possible, but "where all of plaintiff's claims arise from the same nucleus of operative facts and each claim was 'inextricably interwoven' with the other claims, apportionment is unnecessary." Young v. Vista Homes, 243 S.W.3d 352, 368 (Ky. App. 2007) (citations omitted).

Kentucky courts have not, however, addressed whether attorneys' fees may be apportioned among multiple defendants based on the relative amount of time spent by plaintiff in pursuing its claims against each defendant. In California, it is within the trial court's discretion to allocate awards of attorneys' fees. Heppler v. J.M. Peters Co., 73 Cal. App. 4th 1265, 1297 (Cal. App. 1999). "The recognized barrier to segregation for purposes of calculating fee awards is inextricably intertwined issues. Thus, although time-keeping and billing procedures may make a requested segregation difficult, they do not, without more, make it impossible." Id. (quoting Diamond v. John Martin Co., 753 F.2d 1465, 1467 (9th Cir. 1985)).

While there is undoubtedly a great deal of overlap in the billing records, many entries can be directly attributed to the unique issues that arose with respect to Larry Addington. Since Illinois Holding and Illinois Fuels did not contract to be liable for GATX's costs incurred in enforcing the second lease and related guaranties, it would be unfair to hold them responsible for the entire amount of attorneys' fees awarded in this case.[4] For example, a large number of hours were expended by GATX's counsel working on various discovery and sanctions motions relating exclusively to Addington and ECR. [Rs. 37, 44, 55, 58]. GATX suggests that as little as ten to fifteen percent of its litigation costs could be attributed to its claims involving Illinois Holding and Illinois Fuels. Based on the billing records and history of this case, the undersigned finds that to be a reasonable estimate. Therefore, it is recommended that the liability of Illinois Holding and Illinois Fuels be limited to fifteen percent of the total attorneys' fee award.

---

[4] The undersigned notes that ECR is actually the parent company of both Illinois Holding and Illinois Fuels. [Rs. 8, 9]. Therefore, whether or not liability for attorneys' fees is allocated among these parties is likely to be of little practical significance.

10

## IV. OTHER EXPENSES

Plaintiff has submitted a total of $16,522.14 in additional expenses. These are expenses related to services provided by third parties, travel and lodging, and other expenses such as copying and mailing. Both guaranties state that, in addition to attorneys' fees and court costs, GATX may recover for costs and expenses incurred in endeavoring to enforce GATX's rights and remedies. [R. 1, Attach. 5-7 at 3; Attach. 13 at 2]. The Defendants have not objected to these expenses, and the Plaintiff has provided detailed billing records specifically identifying the types of expenses and amounts. The undersigned finds them to be reasonable and would grant the claim for expenses in the amount of $16,522.14.

## V. CONCLUSION

For the reasons stated herein, it is RECOMMENDED that attorneys' fees in the amount of $320,689.66 be awarded. Appendix A contains the Court's calculations used to arrive at this total. It is further RECOMMENDED that Defendants Illinois Holding Company, Inc. and Illinois Fuel Company, LLC, be jointly and severally liable for only fifteen percent of that amount, or $48,103.45.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ.

Proc. 72(b).

Signed July 8, 2011.

