UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 09-41-DLB

GATX CORPORATION,                                                                           PLAINTIFFS,

V.                                          **OPINION & ORDER**

APPALACHIAN FUELS, LLC, et al.,                                                      DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

## I.   INTRODUCTION

This matter is before the Court on a motion by Defendant Larry Addington alleging that the Plaintiff, GATX, violated the terms of the parties' settlement agreement. [R. 111]. The agreement in question stems from a lawsuit filed by GATX against Larry Addington for breach of guaranty. Addington guaranteed a mine equipment lease entered into between GATX and co-defendant Appalachian Fuels, LLC. [R. 1, Attach. 13]. Following Appalachian Fuels' breach of that lease agreement, GATX filed suit against Addington seeking to recover up to $5,000,000 guaranteed by him on the underlying lease. On January 6, 2011, GATX and Addington entered into a settlement agreement resolving the litigation between them. As part of the agreement, the parties filed a proposed Agreed Judgment, which was signed and entered by the Court on January 20, 2011 and amended on January 21, 2011. [Rs. 90, 92]. Judgment was entered in favor of GATX against Addington for the total amount of $2,900,000, plus interest. [R. 90]. GATX was also entitled to recover from Addington any court costs and reasonable attorneys' fees associated with collection of the judgment amount. [Id.].

The agreement stipulated that GATX would forebear collection of Addington's debts until November 16, 2011. [R. 111, Attach. 2 at 2]. Pursuant to Section 4 of the agreement, Addington also agreed to submit to an asset deposition under Federal Rule of Civil Procedure 69(a)(2) within 60 days of the Court's entry of the Agreed Judgment. [R. Id. at 3-4]. In June of 2011, GATX served subpoenas on various third parties in an attempt to discover information about Addington's finances and/or assets. [Rs. 103, 105, 106, 107]. Addington believes that by issuing these subpoenas prior to November 16, 2011, GATX violated the terms of the settlement agreement. As a result of this alleged breach, Addington now asks the Court for two forms of relief. First, he asks the Court to enforce the settlement agreement by entering a protective order that will quash the subpoenas and direct GATX to destroy any documents or information obtained pursuant to the subpoenas. Second, Addington moves the Court to set aside the Agreed Judgment and reopen the underlying case. For the reasons discussed below, Addington's motion will be denied.

## II.  ENFORCEMENT OF THE SETTLEMENT AGREEMENT

Addington first asks the Court to enforce the settlement agreement by entering a protective order that will remedy GATX's alleged breaches. A settlement agreement resolving federal court litigation is governed by state law, and the federal court with jurisdiction over the underlying dispute does not necessarily have jurisdiction over a claim for breach of the settlement agreement. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 378 (1994). Federal courts generally do not retain jurisdiction to enforce settlement agreements because those disputes implicate state law and have little to do with the original controversy that invoked federal subject-matter jurisdiction. See id. at 377-81. The federal district court may retain jurisdiction over the settlement, however, where "the parties' obligation to comply with the terms of the settlement agreement had been made

2

part of the order of dismissal-either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Id. at 381.  The settlement agreement executed by the parties in this case states that "[t]he Court presiding over the Litigation retains jurisdiction to enforce, implement and interpret the terms and provisions of the Agreed Judgment and this Agreement in accordance with the laws of the Commonwealth of Kentucky." [R. 111, Attach. 2 at 6].  The Agreed Judgment entered by the Court, however, neither contains a "retaining jurisdiction" provision, nor incorporates the terms of the settlement agreement. See Caudill v. North American Media Corp., 200 F.3d 914, 917 (6th Cir. 2000) ("The phrase 'pursuant to the terms of the Settlement' fails to incorporate the terms of the Settlement agreement into the order because [a] dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order.").  The Court nevertheless has an independent basis to exercise jurisdiction over Addington's claim because the parties agreed that this Court would have jurisdiction over the settlement agreement, the parties are diverse, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a); see also Kokkonen, 511 U.S. at 382 ("enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."); Limbright v. Hofmeister, 553 F.Supp.2d 886, 892 (E.D. Mich. 2008).

Addington presents two alternative theories for why GATX's third party subpoenas were violative of the settlement agreement.  First, he argues that because the settlement agreement expressly provides for only one type of post-judgment discovery that may be taken before November 16, 2011, Addington's own asset deposition, all other forms of discovery are implicitly barred.  Second, he argues that if the Court were to find that the agreement is ambiguous with regard to

3

whether other asset discovery may be taken prior to November 16, then parole evidence resolves that ambiguity because a prior draft of the agreement rejected by Addington contained a provision that authorized the release of financial information held by third parties to GATX.

This settlement agreement is controlled by Kentucky contract law. See Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 105 (Ky. 2003) ("Settlement agreements are a type of contract and therefore are governed by contract law."). "The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 384 (Ky. App. 2002). If the language of a contract "is unambiguous, the meaning of the language is a question of law, and the intent of the parties must be discerned from the words used in the instrument." Ford v. Ratliff, 183 S.W.3d 199, 203 (Ky. App. 2006) (quoting Luttrell v. Cooper Indus., Inc., 60 F.Supp.2d 629, 631 (E.D. Ky. 1998)). If, on the other hand, the settlement agreement is "capable of more than one different, reasonable interpretation ... extrinsic evidence may be resorted to in an effort to determine the intention of the parties ... ." Id. at 202 (quoting Central Bank & Trust Co. v. Kincaid, 617 S.W.2d 32, 33 (Ky. 1981)). "The criterion in determining the intention of the parties is not what did the parties mean to say, but rather the criterion is what did the parties mean by what they said." Kincaid, 617 S.W.2d at 33.

In Section 2 of the settlement agreement, GATX agreed to "forbear its right to collect on the Agreed Judgment until November 16, 2011, or until judgment is entered against Larry Addington in another court action ... ." [R. 111, Attach 2 at 2]. The issue before the Court, therefore, is whether GATX's forbearance of the "right to collect on the Agreed Judgment" also constitutes a waiver of the right to conduct post-judgment discovery.

Rule 69(a)(2) of the Federal Rules of Civil Procedure provides that "[i]n aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person – including the judgment debtor – as provided in these rules ... ." In the absence of any contrary agreement between the parties, the scope of post-judgment discovery is broad, United States v. Conces, 507 F.3d 1028, 1040 (6th Cir. 2007), and includes the right to obtain discovery from non-parties. Fed. R. Civ. Proc. 69(a)(2). A judgment creditor "is entitled to 'utilize the full panoply of federal discovery measures' provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred." Andrews v. Raphaelson, No. 5:09-cv-77, 2009 WL 1211136, *3 (E.D. Ky. Apr. 30, 2009) (quoting Magnaleasing, Inc. v. Staten Island Mall, 76 F.R.D. 559, 561 (S.D.N.Y. 1977). GATX was therefore permitted to subpoena third parties, unless the settlement agreement prohibited it.

Addington assumes, without explanation, that post-judgment discovery is a form of collection and therefore barred by the forbearance provision of the settlement agreement. The agreement itself, however, does not define the word "collect" as it is used in that provision. In the context of a debt, the word "collect" is defined as "to claim and receive in payment or fair recompense", "to present as due and receive payment for", or "to receive payment, remuneration, or other return". Webster's Third New Int'l Dictionary, 444 (Merriam-Webster ed. 1986). Similarly, the Oxford English Dictionary states that the word "collect" means "[t]o gather (contributions of money, or money due, as taxes, etc.) from a number of people ... to receive money, to get paid." Oxford English Dictionary Online, (2d ed. 1989), http://www.oed.com. As these definitions suggest, the word "collect" implies an actual exchange of money or, at the least, an

5

affirmative act by the creditor to receive money owed. Here, subpoenas and other discovery measures are not acts of collection, but rather are devices designed to "aid ... the judgment or execution ... ." Fed. R. Civ. Proc. 69(a)(2). By issuing subpoenas to third parties, GATX did not seek a writ of execution, lien or take any other action that could be viewed as collecting on the Judgment. Rather, discovery is used "to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution." 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3014 (2d ed. 1997). Post-judgment discovery does not result in an exchange of money owed or an encumbrance on the judgment debtor's assets, accordingly, discovery is not a form of "collection" as that word is ordinarily used.

Addington nevertheless argues that the parties intended for the forbearance provision to apply to post-judgment discovery. He claims that this intent is implicit in Section 4 of the agreement. That section, entitled "Deposition of Mr. Addington Under Fed. R. Civ. P. 69(a)(2)", states that

> [w]ithin sixty (60) days of the Court's entry of the Agreed Judgment, Mr. Addington shall submit to a deposition under Fed. R. Civ. P. 69(a)(2) at the offices of [GATX's counsel]. The subject matter covered in this deposition shall be limited to those typically covered in an asset deposition pursuant to Fed. R. Civ. P. 69(a)(2), including questions related to Mr. Addington's assets, liabilities, and ability to currently pay or otherwise satisfy the Judgment Amount ... .

[R. 111, Attach 2 at 3-4]. By expressly addressing his asset deposition, Addington argues, the settlement agreement implicitly forbids any other form of discovery. To support this conclusion, Addington cites Kentucky cases that have applied the maxim "*expressio unius est exclusio alterius*," which means the expression of one thing implies the exclusion of another. Parrish v. Newbury, 279 S.W.2d 229, 233 (Ky. 1955).

Addington contends that this case is comparable to another case where the Kentucky Court of Appeals interpreted a subdivision restriction that restricted siding in the subdivision to "brick, stone veneer construction otherwise approved by the developers of the subdivision." Stewart v. Johnson, No. 2003-CA-1959, 2005 WL 327024, *1 (Ky. App. Feb. 11, 2005). Applying the maxim in question, the Court concluded:

> The parties to the subdivision restrictions in this case stated that brick or stone veneer siding would be allowed. It naturally follows, therefore, that other types of siding are not allowed. In short, as [the restriction] expressed the type of siding that was allowed, there was no requirement that the restriction then add vinyl siding or other material that was not allowed in order to prohibit the use of such sidings.

Id. at *2. The contractual provision at issue in Stewart, however, served a completely different purpose than the provision at issue in this case. The purpose of the restriction in Stewart was to limit the types of sidings homeowners could use in a subdivision development. It followed therefore, that by listing the specific types of approved sidings, the contract prohibited all other types of sidings. In this case, the provision at issue was clearly not for the purpose of limiting GATX's rights under Rule 69(a)(2). In fact, its purpose is quite the opposite, to limit Addington's ability to delay giving his asset deposition. This purpose is clear from the plain language of the agreement:

> In the event that Mr. Addington fails to submit to such a deposition within sixty (60) days of the entry of the Agreed Judgment, other than for any reason reasonably outside his control, the Forbearance of Collection provisions of this Agreement shall be null, void and unenforceable, and GATX shall be entitled to immediately exercise any and all rights and remedies under the applicable law with regard to the Agreed Judgment and/or the collection of the Judgment Amount.

[R. 111, Attach 2 at 4]. Because this provision is not expressed as a restriction on GATX's ability to conduct post-judgment discovery, it cannot be read as implicitly excluding all discovery other than Addington's asset deposition. It is "a fundamental and supreme rule of construction of contracts [that], the intention of the parties governs." Parrish, 279 S.W.2d at 233. Here, the clear

7

intent of that provision is to ensure that Addington appears for an asset deposition, and the Court must give effect to that intention.

Addington also argues that GATX cannot possibly be permitted to conduct additional discovery in light of the fact that GATX is "entitled to recover from Mr. Addington any court costs and reasonable attorneys' fees associated with the collection of the Judgment Amount." [R. 111, Attach. 2 at 2]. By issuing third party subpoenas, Addington argues, GATX is impermissibly running up attorneys' fees before Addington is required to pay the judgment amount. Addington claims that for all GATX knows, he will pay the judgment amount in full by November 16, 2011, thereby making any prior discovery or collection efforts unnecessary. The Court need not address at this point whether Addington should be liable for GATX's expenses related to discovery that was conducted before the judgment amount is due. However, the attorneys' fees provision does not evidence any intent by the parties to limit GATX's ability to conduct discovery. Accordingly, that provision does not provide grounds to find that GATX breached the settlement agreement.

Alternatively, Addington claims that the agreement is ambiguous with regard to whether GATX may engage in any discovery other than Addington's asset deposition. In light of the alleged ambiguity, he directs the Court to a prior draft of the settlement agreement rejected by him. As discussed in detail above, however, the settlement agreement is not ambiguous. In order to be ambiguous, a contract must be "capable of more than one different, reasonable interpretation ... ." Ford, 183 S.W.3d at 203. Section 2 of the settlement agreement prohibits GATX from collecting on the Agreed Judgment until November 16, 2011, or until other specified events occur. Section 4 of the agreement requires Addington to submit to a deposition within a specified time period or face losing the benefit of the forbearance of collection provision. Neither section is subject to any other

8

reasonable interpretation. The settlement agreement is therefore not ambiguous, and GATX did not breach it by issuing subpoenas to third parties.

### III. PROTECTIVE ORDER

Addington also moves for a protective order pursuant to Rule 26(c) on the basis that GATX's subpoenas are "impermissibly harassing and seek irrelevant information." [R. 111, Attach. 1 at 6]. In its subpoenas, GATX sought the banking records of not only Addington, but also of Mr. Addington's brother, Maxwell Addington. Addington claims that GATX knows his brother "is an invalid who has suffered from being handicapped his whole life." [Id.]. He argues that Maxwell is not a party to the lawsuit, has no relation to it, and that GATX's attempts to subpoena his personal financial records without any basis to do so constitutes an abuse of discovery. GATX failed to respond to this portion of Addington's motion.

A motion for a protective order is available to "a party or by the person from whom discovery is sought." Fed. R. Civ. Proc. 26(c). Under this Rule, a party to a lawsuit has standing to contest discovery sought from third-parties. See, e.g., Underwood v. Riverview of Ann Arbor, No. 08-cv-11024, 2008 WL 5235992, *2 (E.D. Mich. Dec. 15, 2008); United States v. Operation Rescue, 112 F.Supp.2d 696, (S.D. Ohio 1999). To obtain a protective order, the movant must establish good cause. "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." Nix v. Sword, 11 Fed. Appx. 498, 500 (6th Cir. 2001) (quoting Avirgan v. Hull, 118 F.R.D. 252, 254 (D.D.C. 1987)).

Here, the only facts alleged by Addington in support of his motion for a protective order are that his brother is handicapped, is not a party to the lawsuit, and has no relation to it. It is well

established, however, that a judgment creditor is allowed to obtain discovery from third parties in aid of locating assets that may have been fraudulently transferred. Magnaleasing, Inc., 76 F.R.D. at 561. The fact that Maxwell Addington is handicapped and not a party to the underlying lawsuit are not sufficient reasons to issue the requested protective order. Because GATX failed to respond to Addington's motion as it relates to Maxwell Addington, however, the Court will deny this portion of the motion without prejudice. Should Addington discover additional facts supporting his request for a protective order, he may file another motion.

### IV. ADDINGTON'S MOTION TO SET ASIDE THE AGREED JUDGMENT

Addington also moves the Court to set aside the Agreed Judgment. Although he does not explicitly say so, Addington's motion to set aside is presumably brought pursuant to Federal Rule of Civil Procedure 60(b) which states that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

The Sixth Circuit has held that a court acting under subsection (6) of Rule 60(b) "has a duty to vacate a prior order of dismissal *when required in the interests of justice, not whenever a settlement agreement has been breached*." Ford Motor Co. v. Mustangs Unlimited, Inc., 487 F.3d 465, 470 (6th Cir. 2007) (quoting Harman v. Pauley, 678 F.2d 479, 481 (4th Cir. 1982)). "If adequate relief is available through a separate lawsuit for breach of the settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside." Id. at 469 (quoting Moore's Federal

Practice, § 60.48[3][d] (3d ed. 2000)). Accordingly, the Court is presented with a two-step analysis: first, whether the settlement agreement has been breached, and if so, whether extraordinary or exceptional circumstances mandate that the Agreed Judgment be set aside. Id. at 470. The party seeking relief under Rule 60(b) bears the burden of demonstrating the grounds for such relief by clear and convincing evidence." Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 454 (6th Cir. 2008) (citing Crehore v. United States, 253 Fed. Appx. 547, 549 (6th Cir. 2007)). Relief under Rule 60(b)(6) is extraordinary and "[a] district court should normally seek to enforce a settlement." G.G. Marck and Associates, Inc. v. Peng, 309 Fed. Appx. 928, 935 (6th Cir. 2009). The Court in this case has already determined that by conducting post-judgment discovery, GATX did not breach the settlement agreement. Accordingly, there is no basis for setting aside the Agreed Judgment under Rule 60(b).

## IV.  CONCLUSION

For the reasons stated herein, Larry Addington's Motion for Protective Order And/Or to Set Aside the Agreed Judgment [R. 111] is DENIED. To the extent his motion seeks a protective order prohibiting the disclosure of Maxwell Addington's financial information, that portion is DENIED WITHOUT PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(3), a "magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." Courts have interpreted this statute as allowing magistrate judges to issue substantive post-judgment orders which are not final. See, e.g., Gaiters v. City of Catoosa, 226 Fed. Appx. 826, 829 (10th Cir. 2007) ("We have previously held that a district court may refer post-judgment matters to a magistrate under the 'additional duties' provision of 28 U.S.C. § 636(b)(3), so long as the district judge retains

the ultimate responsibility for decision making."). Accordingly, the parties are referred to 28 U.S.C. § 636, and Fed. R. Civ. P. 72 regarding their rights to object to this Order.

Signed September 9, 2011.

